UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUTH ARUNIN, KITISAK KARNKINGPRAI, and CHATCHAI KHAMPHAENG,<br><br>Plaintiffs,<br><br>v.<br><br>OASIS CHICAGO INC. (d/b/a BUTTERFLY SUSHI AND BUTTERFLY THAI RESTAURANT), OASIS MADISON INC. (d/b/a BUTTERFLY SUSHI BAR AND THAI CUISINE ON MADISON STREET) and APIDECH CHOTSUWAN, individually,<br><br>Defendants. | Case No. 14 cv 6870<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Ruth Arunin, Kitisak Karnkingprai, and Chatchai Khamphaeng, filed a five count Complaint alleging violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for unpaid and overtime wages, violation of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.,* for unpaid minimum overtime wages, and for unjust enrichment through unlawful deductions of plaintiffs' tip income. Plaintiffs' move for partial summary judgment [54] and defendants cross-move for summary judgment [58], each alleging they are entitled to judgment as a matter of law. For the reasons stated herein, the Court grants plaintiffs' motion and denies defendants' motion, finding that plaintiffs are employees rather than independent contractors.

**Background**

The following facts are not materially in dispute.[1] Defendants, Oasis Chicago Inc., Oasis U.S.A. Inc., Oasis Madison Inc. and Apidech Chotsuwan, own and operate restaurants as Butterfly

---

[1] Defendants did not comply with L.R. 56.1 by responding to plaintiffs' 56.1 statements of material fact with citations to the record demonstrating a factual dispute. Instead, defendants only filed their own statement of undisputed facts. Accordingly, this Court deems plaintiffs' 56.1 statement of material facts (Dkt. 55) undisputed.

1

Sushi and Butterfly Thai Restaurants (collectively "defendants" or "Butterfly"). Plaintiffs were food delivery drivers for defendants' restaurants. Drivers worked at Butterfly for an indefinite period of time until they quit or were terminated. Plaintiff Karnkingprai worked for Butterfly from October 2008 to the end of February 2014. Plaintiff Khamphaeng worked for Butterfly from April 2011 to the end of February 2014. Plaintiff Arunin worked for Butterfly from February 2013 to the end of February 2014.

Butterfly required drivers have a valid driver's license, a car, and be able to drive and navigate the city. Drivers made deliveries on a first in, first out basis. Plaintiffs used their own vehicles to make deliveries, using their own GPS to map routes of their choosing. Plaintiffs did not display any logos, insignias or advertising for defendants on their vehicles and did not wear uniforms or other identification. Plaintiffs paid for maintenance, repairs and insurance on their vehicles. Plaintiff Karnkingprai was on the title and obtained insurance for plaintiff Khamphaeng's vehicle and had Khamphaeng cover shifts for him. Plaintiff Arunin typically drove 20 miles per lunch shift and 40 miles per dinner shift. Plaintiff Khamphaeng typically drove 20-30 miles per lunch shift and 30-60 miles per dinner shift. Karnkingprai typically drove 25-30 miles per lunch shift and 30-40 miles per dinner shift.

Butterfly paid plaintiffs to deliver food orders to its customers. Plaintiffs were not on defendants' payroll but were paid in cash on a daily basis. Drivers would pool their tips. Drivers' compensation included a guaranteed payment for each shift, credit tips, cash tips, and delivery charges. The custom and practice of Thai and/or sushi restaurants in Chicago was to be paid a guaranteed payment for each shift, credit tips, cash tips, and delivery charges. Butterfly paid drivers a guaranteed amount per shift, referred to as "gas money" ($20 per lunch shift and $25 per dinner shift). Butterfly also set the amount of delivery charges, which were paid to drivers. These rates were non-negotiable. Drivers kept their tips and were not required to report the amount they received to

defendants. Butterfly deducted 10.5%-11.75% from drivers' credit card tips to pay Butterfly's Illinois sales tax obligations. Information entered into the point-of-sale system ("POS system") could include the drivers' names, the amount of their tips, guaranteed payments and delivery charges. Plaintiff Arunin never created or used his own username to access defendants' computer and POS system. Arunin used plaintiff Karnkingprai's username to access and enter information into defendants' POS system. Plaintiff Khamphaeng used five different usernames some of which were also used by other drivers. It was not possible to ascertain from the POS System what shifts the drivers worked or what compensation they earned because the record-keeping was inconsistent. Drivers were required to close out the deliveries in the restaurant computer system at the end of the shifts.

Plaintiffs signed independent contractor profiles. If a driver could not work his shift, he found a substitute driver. Plaintiffs also worked as drivers at other restaurants, while working at Butterfly. Butterfly had fixed shifts with set hours for drivers. Drivers were allowed to choose which shifts they wanted to work and could accommodate their driving shifts at other restaurants. Drivers had flexibility regarding when they arrived at work. Plaintiffs Karnkingprai and Khamphaeng usually arrived 30 minutes prior to the start of a shift to perform the additional tasks that Butterfly required of them. Although Butterfly stopped taking delivery orders at the scheduled end of the dinner shift, drivers had to continue making deliveries until all the orders were complete. Typically, drivers worked 30 minutes beyond the end of their shift. However, it often took 60 minutes to make the last deliveries and return to the restaurant to close out the deliveries in the computer. If a driver could not work his assigned shift, Butterfly required him to get another driver to work in his place. If a driver was not available, defendant Chotsuwan would make the delivery himself.

As a term of their agreement with defendants, plaintiffs agreed to perform work incidental to their deliveries. In addition to making deliveries, plaintiffs performed other restaurant functions for

3

defendants such as: restocking the restaurants' condiments, plastic wares and bags; putting rice in containers; taking out garbage; packing orders; transferring supplies between Butterfly locations; making restaurant bank deposits; and getting food from the grocery store. Plaintiffs also performed more personal duties for defendant Chotsuwan and his family, such as driving them to and from the restaurants; delivering food and coffee to the Chotsuwan home. Additionally, drivers were allowed non-restaurant passengers in their vehicles during their work days.

Butterfly does not deny it kept poor records of plaintiffs' worktime, mileage, or tips. Arunin testified that he typically worked 21.5 hours per week. Karnkingprai testified that he typically worked 65.5 hours per week. Khamphaeng testified that he typically worked 49 hours per week from April 1, 2012 to February 2014. Defendant Chotsuwan fired Karnkingprai after a dispute over drivers' schedules. All three plaintiffs continued to work as delivery drivers for other restaurants after ceasing work with Butterfly. Plaintiffs then filed the instant lawsuit claiming they were employees, not independent contractors, under FLSA and IMWL and defendants failed to pay them minimum wages and overtime wages.

**Legal Standard**

A party is entitled to summary judgment if all of the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes the facts and all reasonable inferences in the light most favorable to the non-moving party. *Abdullahi v. City of Madison*, 423 F. 3d 763, 773 (7th Cir. 2005). The party who bears the burden of proof on an issue may not rest on the pleadings or mere speculation, but must affirmatively demonstrate that there is a genuine issue of material fact that requires a trial to resolve. *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). On cross-motions, summary judgment is appropriate only when evidence as a whole shows

there is no genuine dispute as to any material fact, *Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011), regardless to which motion the evidence is attached. *Las Vegas Sands, LLC v. Nehme,* 632 F.3d 526, 532 (9th Cir. 2011).

**Discussion**

*I. Employment Status*

The dispositive issue for the motions before the Court is whether plaintiffs were employees or independent contractors for purposes of the FLSA and the IMWL. It is undisputed that Butterfly qualifies as an "employer" subject to the FLSA and the IMWL. The FLSA requires that employers pay their employees a minimum hourly wage, 29 U.S.C. § 206(a), and one and one-half times their hourly wage for every hour worked in excess of forty hours per work week. 29 U.S.C. § 207(a)(1). The FLSA defines an "employee" as "an individual employed by an employer." 29 U.S.C. § 203(e)(1). The term is intended to be "broad and comprehensive in order to accomplish the remedial purposes of the Act." *Sec'y of Labor v. Laurtizen*, 835 F.2d 1529, 1534 (7th Cir. 1987); *see also Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L. Ed. 2d 581 (1992). The IMWL also mandates that employers pay employees a minimum wage and overtime wages. 820 ILCS 105/4. The IMWL defines an employee as "any individual permitted to work by an employer in an occupation, but does not include any individual permitted to work *** for an employer employing fewer than 4 employees exclusive of the employer's parent, spouse, or child, or other members of his immediate family." 820 ILCS 105/3(d).

The Illinois Administrative Code specifically states that interpretations of the FLSA should provide guidance to parties interpreting the IMWL, and it sets forth a six-factor test for determining employee status that is virtually identical to the FLSA test. Ill. Admin. Code tit. 56, §§ 210.110, 210.120. When deciding whether individuals are "employees" under the FLSA, courts examine whether the individuals "as a matter of economic reality are dependent upon the business to which

they render service." *Laurtizen,* 835 F.2d at 1534. The Seventh Circuit continues to apply the six factors originally enumerated by the United States Supreme Court in 1947 to determine the economic reality of the nature of the working relationship:

> 1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> 4) whether the service rendered requires as special skill;
> 5) the degree of permanency and duration of the working relationship;
> 6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Laurtizen,* 835 F.2d at 1535 (citing *Bartels v. Birmingham,* 332 U.S. 126, 130, 91 L. Ed. 1947, 67 S. Ct. 1547 (1947); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 91 L. Ed. 1772, 67 S. Ct. 1473 (1947); *United States v. Silk,* 331 U.S. 704, 716, 91 L. Ed. 1757, 67 S. Ct. 1463 (1947). No single factor is determinative and the Court looks at the totality of the circumstances to decide whether as a matter of law an individual is an employee or an independent contractor. *Id.* at 1534-35. Furthermore, the fact that Butterfly had drivers sign independent contractor profiles is not dispositive of their status since courts in this Circuit have conducted the multi-factor test despite the existence of a contract. *See e.g., Estate of Suskovich v. Anthem Health Plans of Va., Inc.,* 553 F.3d 559, 565 (7th Cir. 2009); *Solis v. Int'l Detective & Protective Serv., Ltd.,* 819 F. Supp. 2d 740 (N.D. Ill. 2011); *see also Silk*, 331 U.S. at 715 n. 8 ("If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial.").

*A. Control*

While plaintiffs in this case maintained a certain degree of control over which route they took and which shifts they chose when hired, Butterfly retained much of the control over plaintiffs work. This is not a situation where the employer dictates that food be delivered and the details of

6

manner and means are entirely within the control of the drivers. The undisputed facts show that Butterfly set the shift schedule, determined the amount that would be charged as a delivery fee, sometimes directed drivers on more efficient delivery routes. More significantly, for this Court, is that Butterfly required plaintiffs to perform tasks within the restaurant beyond simply delivering orders. Many of these tasks were personal errands of defendant Chotsuwan and the fact that plaintiffs were required to do this additional work indicates that Butterfly exerted control over them as employees. Moreover, Butterfly had the ability to terminate plaintiffs' employment and to control much of their pay through the POS system for credit card payments. As one early case in this Circuit put it, "it is the right and not the exercise of control which is the determining element." *National Van Lines, Inc. v. National Labor Relations Board,* 273 F.2d 402, 405 (7th Cir. 1960). Thus, this factor weighs heavily in favor of plaintiffs being employees rather than independent contractors.

B. *Profit and Loss*

The second factor courts apply when determining whether an individual is an employee or an independent contractor is profit and loss. "The concept of profit and loss, i.e., the ability to generate an unlimited amount of revenue in excess of expenses while risking that expenses might exceed revenues, is generally associated with the operation of an independent business." *Craig et al v. FedEx Ground Package System, Inc.,* 335 P.3d 66, 90 (Kan. 2014) (reviewing a question certified from the Seventh Circuit Court of Appeals). Plaintiffs here perhaps might increase their profits through tips by being more courteous or more efficient in choosing routes, but their profit or loss is not dependent on their own "initiative, judgment, and energy." *See Silk,* 331 U.S. at 716 (differentiating between unloaders and truckers). Plaintiffs deliver the food that customers order from the defendant restaurants. They have no control over the amount charged for either delivery or either for the food itself, which contributes to the amount they receive in tips. Any reduction in earnings due to fewer orders is a loss of tips and not a loss of any investment. *See Lauritzen*, 835 F.2d at 1536.

*C. Capital Investment*

Capital investment is related to profit and loss, but refers more to "large expenditures, such as risk capital, capital investments, and not negligible items or labor itself." *Lauritzen*, 835 F.2d at 1537 (quoting *Donovan v. Gillmor,* 535 F. Supp. 154, 161 (N.D. Ohio 1982)). Butterfly makes much of the fact that plaintiffs provide their own vehicle and are responsible for all maintenance and insurance. However, the vehicles used by plaintiffs are not vehicles specialized for the particular purpose, like delivery vans or tractor-trailers. Plaintiffs can use any vehicle to make deliveries. There is no evidence in the record that plaintiffs made any capital investment specific to the work.

*D. Degree of Skill Required*

The only skills required of drivers in this case are to drive a vehicle and navigate the city or follow the directions of a GPS to find an address. These are not specialized skills.

*E. Permanency*

The more permanent the relationship, the more this factor weighs in favor of employment rather than independent contracting. *See Lauritzen*, 835 F.2d at 1537; *Donovan v. Brandel,* 736 F.2d 1114, 1117-18 (6th Cir. 1984). In this case, plaintiffs are hired and work their assigned shifts until either they or Butterfly decides to terminate the relationship. This factor weighs in favor of plaintiffs being employees since they are hired to do the job indefinitely.

*F. Food Delivery as an Integral Part of Defendants' Business*

Butterfly is in the business of operating restaurants and as part of that business they offer home delivery. Butterfly could choose to solely operate eat-in or carry-out food service, but they choose to offer customers the option of home delivery. Thus, food delivery is an integral part of their business.

*G. Degree of Drivers' Dependence*

Although this factor is not enumerated above, courts also have considered the degree to which the individuals claiming to be employees are dependent on the employer. *See Lauritzen*, 835 F.2d at 1538; *Usery v. Pilgrim Equipment Co.,* 527 F.2d 1308, 1311-12 (5th Cir. 1976). "It is not necessary to show that workers are unable to find work with any other employer to find that the workers are employees rather than contractors." *Lauritzen*, 835 F.2d at 1538. As the undisputed facts here demonstrate, plaintiffs did act as drivers for other restaurants, but that does not mean they were not Butterfly employees. If plaintiffs did not deliver food for Butterfly, they would be unemployed until they found another restaurant to hire them to deliver food.

Reviewing the totality of the circumstances here, this Court cannot say as a matter of law that plaintiffs were independent contractors. Particularly since defendants appeared to treat plaintiffs as employees by requiring they perform duties within the restaurant and for the defendant restaurant owner beyond simply making food deliveries. Thus, they were not in business for themselves beyond the reach of the FLSA or the IMWL. The relevant case law, though no case is precisely on point with food delivery, bears out this conclusion.

In *United States v. Silk*, the Supreme Court found that coal truck drivers were independent contractors. The court concluded that the driver-owners of the coal trucks had so much responsibility for investment and management that they could be considered small business men. "They own their own trucks. They hire their own helpers. In one instance they haul for a single business, in the other for any customer." 331 U.S. at 719. In *Silk,* the court noted several examples of independent contractors, including "physicians, dentists, veterinarians, contractors, subcontractors, public stenographers, auctioneers, and other who follow an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees." *Id.* at 715, n.8 (*quoting* 26 C.F.R. §400.205).

In *National Van Lines, Inc. v. National Labor Relations Board,* the Seventh Circuit concluded that the contract-drivers were independent contractors. In that case there were two categories of drivers described: "employee-drivers," who were either local or long distance drivers making local pickups and deliveries, to transport household goods to warehouses for storage prior to long distance distribution, which the court concluded were employees because they were paid wages, had benefits, and National Van Lines withheld tax and social security contributions; and "contract drivers," who provided a motor-powered tractor owned by him, a van-type semitrailer, all accessorial equipment required by National. 273 F.2d at 405-406. In addition to equipment, "contract drivers" also maintained their own employees, if any were needed, by hiring, directing, paying, discharging, and otherwise controlling their employment. *Id.* at 406. "Contract drivers" were paid in a lump sum each trip for services at a specified percentage of revenue on an agreed rate schedule. *Id.* Based on these facts, the court concluded that "contract drivers" were independent contractors. *Id.* at 407.

In *Craig et al v. FedEx Ground Package System, Inc.*, the Supreme Court of Kansas considered the question certified by the Seventh Circuit Court of Appeals of whether drivers for FedEx are employees as a matter of law. The court answered the question in the affirmative, applying a 20-factor test encompassing the factors enumerated above as well as others. In reaching its conclusion, the court found several facts persuasive, particularly the degree of control FedEx exerts over drivers and that they looked and acted as employees. 335 P.3d 66 (Kan. 2014).

Butterfly relies on *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300 (S.D.N.Y. 2009), to support its assertion that plaintiffs are independent contractors. However, that case is substantially different from this case in one important way. In that case, the plaintiff was a delivery driver for the defendant shipping company and the court concluded he was an independent contractor based in part on the fact that the plaintiff was subject to the demands of clients, clients contacted the plaintiff

directly, and the plaintiff only contacted Velocity to facilitate payment. *Id.* at 307. By contrast, here, plaintiffs were subject to the demands of Butterfly.

This Court therefore finds as a matter of economic reality that plaintiffs are employees, and not independent contractors. Butterfly determined the tasks to be performed, set schedules and payment, although drivers maintained their own vehicles and are not required to wear uniforms, their services are integral to Butterfly's business and the drivers are dependent on Butterfly for employment. This is not a situation where plaintiffs own a car that they use to hire out for food delivery services that they advertised generally as a business to whoever wished to contract with them. Butterfly determined the amount to charge for food and delivery, withheld tax obligations from credit card tips, and had the right to control plaintiffs work. Butterfly paid drivers per shift, expected them to work their assigned shifts or find a replacement, and most significantly perform additional work for the restaurants, or risk termination. Thus, the totality of the circumstances indicates that plaintiffs were employees while working for Butterfly.

*II. Damages*

Plaintiffs request this Court find that defendants fail to qualify for the tip credit; that defendants are not entitled to meal credits; and that plaintiff Arunin is owed $4,617.50 in unpaid wages, and an additional amount in liquidated damages with reasonable attorneys' fees to be determined by a separate petition. Defendants fail to present evidence creating an issue of fact as to damages.

The Illinois minimum wage rate as of July 1, 2010, is $8.25/hour. Because Butterfly did not maintain complete records, the statutes allow plaintiffs to rely on their testimony unless it is rebutted by defendants. *See Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770, 775 (7th Cir. 2013). Indeed, defendants admit that any record keeping they had was not enforced and drivers were allowed to enter information regarding deliveries in defendants' computer system using any username.

Defendants are entitled to deduct the amounts they paid the plaintiffs, including the $20 per lunch shift and $25 per dinner shift. Plaintiffs also request mileage on behalf of Arunin at the standard IRS rates (55.5 cents/mile in 2012, 56.5 cents/mile in 2013, and 56 cents/mile in 2014). The FLSA also provides for liquidated damages unless defendants can show they acted in good faith. 29 U.S.C. § 260. Defendants' company witness testified that Butterfly retained 10-15% of credit card tips to pay defendants' Illinois sales tax obligations. Therefore, Butterfly does not qualify for the tip credit. 820 ILCS 105/4(c); 29 U.S.C. § 203(m). Butterfly, as employer, has "the burden of proving that a wage deduction for a meal credit program represented the reasonable cost of the meals furnished." *Monson v. Marie's Best Pizza, Inc.*, 2014 IL App (1st) 130979-U, P37 (Ill. App. Ct. 1st Dist. 2014) (*citing Morgan v. Speak Easy, LLC*, 625 F. Supp. 2d 632, 655 (N.D. Ill. 2007)). Butterfly has not presented any record evidence to determine the cost of employer-provided meals and cannot therefore claim the meal credit. Accordingly, defendants have failed to create a genuine issue of material fact on the issue of damages.

**Conclusion**

Based on the foregoing, this Court grants plaintiffs' Motion for partial summary judgment [54] and denies defendants' motion for summary judgment [58]. Status hearing set for Monday, April 4, 2016, at 9:00 a.m.

IT IS SO ORDERED.

Date: March 4, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge